**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 16-cv-02729-MSK

AMANDA A. REDIN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commission of Social Security,

    Defendant.

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Amanda A. Redin's appeal from the Commissioner of Social Security's (the "Commissioner") final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES**

### I. Jurisdiction

Ms. Redin filed a claim for disability insurance benefits pursuant to Titles II and XVI in April 2014, asserting that her disability began a month earlier. After her claim was initially denied, Ms. Redin filed a written request for a hearing before an Administrative Law Judge (the "ALJ"). This request was granted and a hearing was held in June 2016.

The ALJ's Decision applied the five-step social security disability claim evaluation process: (1) Ms. Redin had not engaged in substantial gainful activity after April 1, 2014; (2) she

had the severe impairments of hepatitis C, obesity, asthma, affective disorder, anxiety disorder and learning disorder; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App'x 1; (4) Ms. Redin had the residual functional capacity ("RFC") to perform light work as set forth in 20 C.F.R. § 416.967(b)[1] with various additional limitations, and that she could not perform her prior work; and (5) Ms. Redin could perform a number of jobs in the national economy including the occupations of small products assembler, electronics worker and cafeteria attendant. Based on this conclusion, the ALJ determined that Ms. Redin was not and had not been under a disability, and she denied Ms. Redin's claim.

The Appeals Council denied Ms. Redin's request for review of the Decision, making the Decision the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Redin's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Issue Presented**

Ms. Redin asserts three arguments in her appeal. First, she argues that the ALJ improperly gave little weight to the opinions of a consultative psychological examiner and a treating physician's assistant as compared to two consulting agency experts; second, Ms. Redin contends that the ALJ failed to develop the record and consider the ruling and documents from her social security disability application and determination in the late 1990s; and third, she

---

[1]   All references to the Code of Federal Regulations (C.F.R.) are to the 2016 edition, which was the version in effect at the time of the ALJ's decision. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

contends that the ALJ erred by failing to determine whether she met the § 12.05 "intellectual disability" Listing requirements at Step 3. Because the last of the arguments is dispositive and requires remand, the Court's analysis focuses exclusively on it.

### III. Relevant Material Facts

Ms. Redin submitted her application for social security benefits on April 1, 2014, claiming an onset of disability of March 25, 2014.[2] Her application was submitted shortly after her release from state prison, where she had been incarcerated for several years for drug-related offenses. Ms. Redin did not work to any appreciable degree prior or subsequent to her incarceration, and the only evidence concerning any paid work or employment dates back to the early 1990s.

Among Ms. Redin's severe impairments is a learning disorder. (**#22-2**, at 41). The record is replete with references by Ms. Redin and various health care providers to her learning disorder. (*E.g.*, **#22-2**, at 59, 61; **#22-3**, at 9; **#22-6**, at 2-5, 7-9, 14; **#22-7**, at 3-4, 9-10, 16, 24-25, 28-29, 60; **#22-8**, at 3, 9, 12-13.) In addition, it shows that Ms. Redin was enrolled in special education classes throughout her high school career. Treatment records from North Range Behavioral Health show that Ms. Redin reported that she had been diagnosed with a learning disability and mild mental retardation. (**#22-7**, at 4, 17, 24.) Those North Range Behavioral Health Record records further reflect that mild mental retardation diagnosis normally

---

[2] There is some evidence in the record that Ms. Redin had been awarded social security benefits prior to her incarceration. Most of such evidence is found in Ms. Redin's statement on her application and statements made to various providers that she previously had received disability benefits. However, there is no evidence in the record confirming that Ms. Redin had been awarded benefits and on what basis benefits were awarded. In her Decision, the ALJ did not address the issue of Ms. Redin's prior eligibility (or lack thereof) nor did she seek to develop the record to reflect it, and it did not play any role at any stage of her analysis. In the interest of completeness, it should be noted that counsel for Ms. Redin did not raise this issue at the hearing, and indeed, he affirmatively indicated that he was not seeking to add any additional materials or documentation to the record. (**#22-2**, at 58-59.)

3

involves significantly subaverage intellectual functioning associated with an IQ approximately below 70. (*Id.* at 10, 25, 29.) The record also contains a report from a consulting psychologist to whom Ms. Redin reported that she has a learning disability and that she had received social security benefits (ostensibly due to that learning disability) from 1995 to 2005. (**#22-8**, at 9.)

The initial determination premised on the opinion of the state examiner, Dr. Mark Suyeishi, Psy.D., who evaluated Listings § 12.04 (affective disorders) and § 12.08 (personality disorders), but did not evaluate § 12.05 (intellectual disorders). At the hearing before the ALJ, Ms. Redin's counsel requested consideration of her mental impairments under § 12.05, as well as § 12.02, § 12.04 and § 12.08. Despite the request, the ALJ did not address § 12.05 criteria, focusing instead on only Listings § 12.02 (neurocognitive disorder), § 12.04 (depressive, bipolar and related disorders), and § 12.06 (anxiety and obsessive compulsive disorders). With regard to these Listings, the ALJ found that Ms. Redin did not meet the "paragraph B" criteria for any of these Listings because her mental impairments resulted in only mild or moderate rather than marked restrictions or difficulties in her activities of daily living, maintaining social functioning, or maintaining concentration, and she did not experience any episodes of decompensation. The ALJ also found that Ms. Redin did not meet the "paragraph C" criteria for the mental disorder Listings because there was no evidence to support that finding, which generally requires a medically documented history of the mental disorder of at least two years, along with multiple episodes of decompensation or a likelihood of decompensation in the case of an increase in mental demands or change in environment.

Nowhere does the Decision address Ms. Redin's severe learning disorder or her contentions that she had previously been awarded benefits based on it. The ALJ did not develop the record to determine whether Ms. Redin had previously been awarded disability benefits

based on her learning disorder, did not consider the evidence of record in light of Listing § 12.05 and did not explain why she did not do so.

## IV. Standard of Review

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.. *Hamilton v. Sec'y of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## IV. Discussion

At Step 3, the ALJ is required to determine whether the impairments identified as severe are equal to or the medical equivalent of a Listing. 20 CFR §§ 404.1520(d); 416.920(d). Here,

the ALJ considered all of Ms. Redin's severe impairments, including her asthma, obesity and some mental disorders, in light of the Listings, but for her learning disorder.

The Listing most closely correlated with a learning disorder is found at 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.05. It provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> > A. Mental incapacity evidenced by dependence upon others for personal needs (*e.g.*, toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> >
> > OR
> >
> > B. A valid verbal, performance, or full scale IQ of 59 or less;
> >
> > OR
> >
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> >
> > OR
> >
> > D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> >
> > > 1. Marked restriction of activities of daily living; or
> > > 2. Marked difficulties in maintaining social functioning; or
> > > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> > > 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The express request of Ms. Redin's counsel that the ALJ consider "the listings for 12.02, *12.05*, 12.04, 12.06" (**#22-2**, at 57 (emphasis added)) was sufficient to raise the issue. Based on the evidence of record, Ms. Redin's severe learning disorder could be comparable to an intellectual disability as described in the § 12.05. The evidence of record shows Ms. Redin had

6

an intellectual disability when she was in high school. There are repeated references by Ms. Redin that she previously received benefits based on her learning disorder and there is suggestion in medical treatment notes that her learning disorder equated to mild retardation. Had the ALJ developed the record to determine whether a prior award had been made or directed IQ testing, a comprehensive determination of whether § 12.05 criteria were applicable could have been made. However, even without development of the record, the designation of Ms. Redin's learning disorder as a severe impairment required a consideration of § 12.05. *See Clifton v. Chater*, 79 F.3d 1007, 1008-09 (10th Cir. 1996); *Williams v. Berryhill*, 682 Fed. App'x 665, 667-68 (10th Cir. 2017).

The ALJ's failure to determine whether Ms. Redin's learning disorder met any of the §12.05 intellectual disability criteria or to explain why no analysis was required constitutes error and requires remand. *See, e.g., Peck v. Barnhart*, 214 Fed. App'x 730, 734-35 (10th Cir. 2006); *Smith v. Barnhart*, 172 Fed. App'x 795, 801-02 (10th Cir. 2006).

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.** The Clerk shall enter a Judgment in accordance herewith.

DATED this 7th day of December, 2017.

B**Y THE COURT:**

_____

Marcia S. Krieger
United States District Judge